### QUINN v. PIETRO.

(Supreme Court, Appellate Division, Second Department. March 7, 1899.)

1. COLLISION WITH BICYCLE—GROSS NEGLIGENCE CAUSING DEATH.

Defendant, with a loaded wagon, met plaintiff's intestate, a 16 year old boy, riding a bicycle, who kept to the right of the highway, 10 feet from the curb. The defendant, instead of doing the same, changed his course, and drove to the left side, at a fast trot. The boy in vain directed his course nearer to the curb, to avoid a collision; and four feet from the gutter the wagon pole struck the bicycle, knocked him off, and he was fatally injured by being run over by the horses and wagon. *Held*, that his death was due to the gross negligence of defendant.

2. SAME—EVIDENCE.

In an action for wrongful death, caused by defendant driving over a boy riding a bicycle, defendant's declarations on being arrested therefor, in which he swore at the bicycle, and said they were no good, were admissible as tending to show his hostility to bicycles, and as increasing the probability that he was indifferent to the rider's rights.

3. REASONABLE RECOVERY FOR DEATH.

Recovery of $2,000 for the death of a 16 year old boy is reasonable.

Appeal from trial term, Kings county.

Action by Hannah Quinn, as administratrix of William Quinn, deceased, against Pasquale Pietro. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

A. F. Van Thun, Jr., for appellant.

James D. Bell, for respondent.

WILLARD BARTLETT, J. The plaintiff's intestate, a lad 16 years old, while riding a bicycle on Eastern Parkway, in Brooklyn, on a pleasant October afternoon, in broad daylight, was run down and killed by a team of horses drawing a wagon load of manure, and driven by the defendant. The boy was wheeling westward along the Eastern Parkway, and kept to the right of the highway, 10 feet from the curb. The defendant, who was driving eastward, instead of keeping to the right of the middle of the road,—which would have avoided any possibility of collision with the bicycle,—changed his course, and

drove over to the left side, and down that side of the parkway, at a fast trot. As the wagon and bicycle approached one another on that side, the rider of the wheel appears to have directed his course nearer and nearer to the curb, for the purpose of avoiding the defendant's wagon, but in vain. The defendant also kept turning towards the gutter, until finally, at a distance of four feet from the gutter, the wagon pole struck the bicycle, and knocked off the rider, who was then trodden under the hoofs of the horses, and run over by the wagon wheels, suffering injuries which resulted in his death.

This narrative presents a view of the accident based upon evidence which is in the case, and which the jury may well have believed to be true. There is other evidence which, if credited, would have justified them in adopting an entirely different view, exonerating the defendant; but it is manifest that the jury refused to believe his testimony to the effect that he did not leave the right side of the street, and that the boy had his head down all the time he was approaching the wagon, until he struck it. I think the proof authorized the jury to find that the death of the plaintiff's intestate was caused solely by the gross negligence of the defendant.

The plaintiff was allowed to prove what the defendant said shortly after his arrest, when asked whether he knew the boy's bicycle, which had been brought to the police station. According to one witness, his answer was: "Damn the bicycle." According to another, he responded: "Damn the bicycle, anyway; they are no good." The objection to proof of these declarations was not well taken. The evidence tended to show the existence of a feeling of hostility to bicycles on the part of the defendant, which increased the probability that he had conducted himself with indifference to the rights of the rider of such a vehicle when he encountered the plaintiff's intestate, on the Eastern Parkway; and, in this point of view, the testimony was relevant, especially as there were circumstances indicating that the defendant might have willfully brought about the collision.

The verdict was reasonable in amount ($2,000), and the judgment and order refusing a new trial should be affirmed. All concur.